OMAHA PAXTON HOTEL CO., APPELLANT, V. BOARD OF EQUALIZATION OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

92 N. W. 2d 537

Filed October 24, 1958. No. 34392.

*Gaines, Spittler & Moore,* for appellant.

*Eugene F. Fitzgerald* and *John C. Burke,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is an appeal by plaintiff, Omaha Paxton Hotel Company, from a judgment rendered by the district court for Douglas County affirming the action of defendant Board of Equalization in fixing the basic value of plaintiff's land and improvements located at the southwest corner of Fourteenth and Farnam Streets in Omaha. The county assessor had fixed the basic value of plaintiff's land for 1956 at $140,000, and of plaintiff's improvements thereon at $1,054,000, or a total of $1,-194,000. After hearing, defendant dismissed plaintiff's complaint that such valuations were excessive, and therefrom plaintiff appealed to the district court, which rendered a judgment affirming the action of defendant upon the grounds, among others, that plaintiff had failed to establish by a preponderance of evidence that such values were excessive when compared with values placed

on other similar property, or that the fixing thereof was the result of a failure of plain legal duty and was not a mere error of judgment. Thereafter, plaintiff's motion for new trial was overruled, and it appealed, assigning in effect that the trial court erred in so finding and adjudging the issues. We sustain the assignment.

Section 77-201, R. S. Supp., 1955, effective September 18, 1955, and applicable herein, provided that all tangible and real property in this state, not expressly exempt therefrom, should be valued at its *basic value* and assessed at 50 percent of such basic value, which should be taken and considered as the taxable value upon which the levy should be made.

Previously, section 77-201, R. S. Supp., 1953, effective March 6, 1953, was identical except it provided that all property in this state, not expressly exempt therefrom, should be subject to taxation and valued at its *actual value* and assessed at 50 percent of such actual value, which should be taken and considered as the taxable value upon which the levy should be made.

Section 77-112, R. S. Supp., 1955, effective September 18, 1955, and applicable herein, provided that *basic value* should mean the value of property for taxation that is ascertained by using the following formula where applicable: "(1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; and (5) comparison with other properties of known or recognized value."

Previously, section 77-112, R. R. S. 1943, provided that: "Actual value" should mean value in the market in the ordinary course of trade.

In that connection, it is conceded that defendant passed a resolution in 1956 which in effect made basic value 70 percent of actual value.

At the outset, it should be noted that the defendant, relying upon DeVore v. Board of Equalization, 144 Neb. 351, 13 N. W. 2d 451, argued that all evidence sought

to be introduced relating to a compromise and settlement by stipulated court decree fixing the 1955 values of plaintiff's property for assessment purposes was immaterial as evidence of the value of such property for 1956. The record shows that ruling upon objections of defendant to admission of the decree itself, and evidence directly relating thereto, was generally deferred and not specifically disposed of. In that connection, there was competent and relevant evidence adduced by both parties with regard to the actual value of plaintiff's property in 1955, and the actual and basic value of plaintiff's property in 1956, which was properly received. It appears that the decree itself, together with evidence directly relating thereto, was not admissible, but that alone would not require a reversal because we have consistently held that: "In a case tried to the court, either in law or in equity, the presumption obtains that the trial court in arriving at decision considered only such evidence as was competent and relevant, and this court will not reverse a case so tried because other evidence was admitted, if there is sufficient competent and relevant evidence in the record to sustain the judgment." Pierce v. Fontenelle, 156 Neb. 235, 55 N. W. 2d 658.

In such a situation, this court on appeal also considers only such evidence as is competent and relevant, bearing in mind, as hereinafter observed, that in this case the actual and basic value of plaintiff's property in 1956 was one of fact to be determined from such evidence, unaided by any presumption.

The manager of plaintiff's hotel for the last 15 years, who was familiar with its operations, was called as a witness by plaintiff. He testified that no basic improvements, except ordinary maintenance, had been made on plaintiff's property for the last few years, and that it was fundamentally the same property in 1956 as in 1955; and that between 1955 and 1956 there had been an increase in room vacancies, which resulted in about 70 percent occupancy, but that the hotel had charged

the same rates at all times, and its income and profits had decreased. He did not have the exact gross and net income figures for 1956 because they were handled in plaintiff's home office, which without dispute was in Galveston, Texas.

A man who had been engaged in the real estate business in Omaha since 1919, and had no interest in the Paxton Hotel property, was called as a witness by plaintiff. His testimony revealed substantially the following: That he was a qualified expert in making appraisals of real property such as that involved, and that at plaintiff's request he had appraised it in March 1956 for the tax year 1955. He did have an interest in the Woodmen of the World Building directly east of the Paxton Hotel, and at one time previously had an interest in a parking lot across the street north of the Woodmen of the World Building. Thus he claimed to have some knowledge of property values in that vicinity, although he placed no specific value on any properties thereat except plaintiff's property.

In making the appraisal, he knew that in March 1956 the Paxton Hotel had 300 rooms with an occupancy of about 73 percent, and each room rented for an average of $7 a day. He had no knowledge of plaintiff's income for the lease of a drug store in the Paxton Hotel on the corner of Fourteenth and Farnam Streets, and he had no exact knowledge of plaintiff's income from its bar, restaurant, and other facilities. However, he figured same at 46 percent of gross income according to standards of measurement authorized by a national survey of hotels. He knew, and it was undisputed, that plaintiff's property was suitable only for a hotel. He knew that the Paxton Hotel was built in 1928, and from his figures adduced the number of cubic feet in the building. He claimed to be familiar with the Fontenelle Hotel, and testified that it was the only one in the downtown area comparable in size and quality with that of the Paxton Hotel. He admitted that they had

the same number of rooms, but testified that the Fontenelle Hotel rooms were larger and that such hotel had double special accommodations, and because thereof and because of its location, such hotel was in a higher psychological level; and that it was in a more desirable location because of close proximity to other high-class buildings and units, such as the Athletic Club, the Municipal Auditorium, and the biggest retail stores and banks, which would all be factors increasing its valuation. However, he placed no valuation on the Fontenelle Hotel property.

In that connection, it was his opinion that plaintiff's property had decreased in actual value between 1955 and 1956 because of general attrition of the east end of the heart of the downtown area by movement therefrom toward the west section of the city. It was his opinion that on March 1, 1956, all of plaintiff's property except the furniture, but including the land and improvements, had an actual value of $1,100,000, which would give it a total basic value of only $770,000, or $424,000 less than $1,194,000 as fixed by the county assessor.

Generally speaking, plaintiff's expert testified that in arriving at that valuation he took into consideration capitalization of the property on an income basis, relative location, functional use, cost less depreciation of the building, plus value of plaintiff's land fixed at $115,-500, then compared values and compared as well as possible plaintiff's hotel with other hotels in their operations.

The county assessor was called as a witness by defendant. He testified that on March 1, 1956, he assessed plaintiff's land at a basic value of $140,000, and plaintiff's improvements at a basic value of $1,054,000, and, over objection, expressed the conclusion that such values were fairly equalized and uniform with similar property in Douglas County. On cross-examination, however, he admitted that such values had been made by someone else in his office, he did not know who, and that they

were so submitted to and accepted by him. In that respect, he admitted that he had no personal knowledge about the number of rooms in the Paxton Hotel, its potential income, or anything else about such hotel. His office did have a card record which had been prepared by an appraisal board no longer in existence, upon which appeared the cubic content of plaintiff's hotel building, when it was built, type of construction, cost of replacement, and depreciation factors. However, admittedly such card record contained no information with regard to income of plaintiff's property. He did not know how plaintiff's rates compared with those of the Fontenelle Hotel, and admited that they might be considerably lower. He finally admitted that in giving his testimony about the value of plaintiff's property he relied upon the card records aforesaid which he had with him at the trial, and what somebody in his office had told him, but he could not remember who it was, and no such person was called as a witness by defendant.

In other words, the county assessor never inspected plaintiff's property, failed to perform his plain legal duty and conform to the formula provided by section 77-112, R. S. Supp., 1955, in material respects, and without any proper foundation therefor arbitrarily made the values given by him.

As recently as K-K Appliance Co. v. Board of Equalization, 165 Neb. 547, 86 N. W. 2d 381, this court held: "Ordinarily the valuation of a county assessor for tax purposes will be presumed to be correct. The burden of proof rests upon the taxpayer to prove that an assessment is excessive." In that respect however: "Where the evidence shows that an assessment by a county assessor was arbitrarily made, the assessment cannot be sustained. In such a situation the valuation becomes one of fact to be determined from the evidence, unaided by presumption." Those rules have application herein.

In that connection, a man who had been engaged in the real estate business in Omaha since 1898 was called

as a witness by defendant. His testimony revealed that he was a qualified expert in making appraisals of real property such as that here involved, and that at defendant's request he had appraised plaintiff's property in March 1956 for the tax year 1955. He had been a member of the Douglas County tax appraisal board from 1947 to 1955. His testimony revealed that in fixing the value of plaintiff's property he used a method and formula comparable in material respects with that used by plaintiff's expert, except that he used different percentages in determining capitalization on an income basis and cost less depreciation. His opinion was that in 1956 the actual value of plaintiff's land was $200,000, with a basic value of $140,000, and that the actual value of plaintiff's improvements was $1,400,000, with a basic value of $980,000. That conclusion made the basic value of plaintiff's land and improvements $1,120,000 instead of $1,194,000, as fixed by the county assessor and affirmed by both the board of equalization and the district court. It will be borne in mind that, as shown by defendant's expert, the tax levy for 1956 upon plaintiff's land would, in the light of basic values fixed by such witness, be made upon 50 percent of $140,000, or $70,000, as it was made in 1955 on an assessed value of $140,000, and the levy on plaintiff's improvements was made in 1955 on 50 percent of an assessed value of $972,000, or $486,000, but would be made in 1956 on 50 percent of a basic value of $980,000, or $490,000.

In that respect, such witness testified that the assessed value used in 1955 as aforesaid was only 80 percent of the actual value of plaintiff's property under the tax procedure then used in Douglas County; that there had not been much change and no increase in actual value of plaintiff's property between March 1955 and March 1956; and that the values given by him on plaintiff's property for 1956 were fairly equalized with other values on comparable property. In that connection, he was familiar with the Fontenelle Hotel property, which, as

admitted by plaintiff's expert witness, was the only hotel comparable with plaintiff's property in the downtown district, but had a higher valuation, as heretofore pointed out. He testified that in 1956 the basic value of the Fontenelle Hotel land was properly fixed by the county assessor at $145,000, which would make its actual value $207,143, and the basic value of the Fontenelle improvements was so fixed at $1,120,000, which would make its actual value $1,600,000. Admittedly, as fixed by defendant's own expert, the total basic value of plaintiff's property by comparison should be $1,120,000 instead of $1,194,000, as fixed by the county assessor.

As we view the record, plaintiff established that the basic value fixed by the county assesssor and approved by defendant was excessive, but plaintiff failed to establish that in March 1956 the total actual value of plaintiff's property was only $1,100,000, which would give it a basic value of only $770,000. If, as plaintiff's expert testified, the actual value of plaintiff's land was $115,500, then its basic value would be only $80,850, and the actual value of plaintiff's improvements would be only $984,500, which would give it a basic value of only $689,150. We conclude that the evidence will not support such specific valuations.

On the other hand, the only competent evidence adduced by defendant upon values supports and sustains a conclusion that the basic value of plaintiff's land was $140,000, and frankly admits that the basic value of plaintiff's improvements was only $980,000, making a total basic value of $1,120,000. Under the circumstances as presented in this case, defendant is bound by such evidence and cannot well claim that the basic value was more than that amount.

Contrary to defendant's contentions, this case is distinguishable in material respects from LeDioyt v. County of Keith, 161 Neb. 615, 74 N. W. 2d 455, and Lucas v. Board of Equalization, 165 Neb. 315, 85 N. W. 2d 638. Rather, K-K Appliance Co. v. Board of Equalization,

*supra,* is comparable in principle and controlling.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to fix the basic value of plaintiff's land at $140,000, and the basic value of plaintiff's improvements at $980,000, and thus make the total basic value of plaintiff's property $1,120,000. All costs are taxed to defendant.

REVERSED AND REMANDED WITH DIRECTIONS.