CHARLES F. ADAMS, APPELLANT, v. BOARD OF EQUALIZATION OF HAMILTON COUNTY, NEBRASKA, ET AL., APPELLEES.

95 N. W. 2d 627

Filed March 27, 1959. No. 34534.

*Charles F. Adams,* for appellant.

*John W. Newman* and *Homer G. Hamilton,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This litigation involves a controversy concerning the value on March 1, 1956, of Lots 7 and 8, Block 2, Ernst Addition to the city of Aurora, for taxation purposes. The lots were owned by appellant and were improved by a house constructed thereon. A valuation of $31,524 was placed on the property and this was sustained by the district court. The trial of this appeal from that adjudication is de novo as an equitable proceeding. Matzke v. Board of Equalization, 167 Neb. 875, 95 N. W. 2d 61.

The county assessor testified that he observed an excavation for and the construction of the residence on the lots. He did not testify that he was at any time on the premises. He did state that he was not in the house at any time. A memorandum, described in the record as a card, filled out by a representative of a professional appraiser, was delivered to the assessor who examined and checked it for mathematical accuracy. He found no error in the card made in reference to the property involved in this case and he made no change in it. He accepted the replacement cost as stated thereon less 6 percent thereof as the value of the building on the lots. The assessor stated that he took the amount shown on the card as replacement value less 6 percent

as market value, computed 74 percent of that, and called the result the basic value. He said that was the formula he followed. The resolution of the county board of equalization of the county, hereafter referred to as appellee, provided that the basic value of real property assessed in that county was determined to be 70 percent of actual or market value. The assessor, in disregard of this, used in this matter 74 percent.

Generally, the valuation by the assessor is presumed to be correct. If he does not make a personal inspection of the property but accepts the valuation thereof fixed by a professional appraiser, this presumption does not obtain. However, in such a situation the burden rests upon the protesting party to prove that the valuation, and hence the assessment, is excessive. Gamboni v. County of Otoe, 159 Neb. 417, 67 N. W. 2d 489. There is no presumption, under the circumstances of this case, that the valuation accepted by the assessor was correct.

Appellant produced evidence of the market value of the real estate on March 1, 1956. P. J. Refshauge had resided and been a real estate dealer in Hamilton County for 51 years. The last 40 years he had resided and maintained a place of business in the city of Aurora. He had been a licensed real estate broker since the state provided by law for such a license. He had during his residence in Hamilton County owned, bought, sold, leased, and managed real estate of all kinds in that county and in the city of Aurora and he also had experience in reference to the sale, purchase, and dealing in real estate in several other counties of the state. He had examined and was familiar with the real estate of appellant involved in this case. He testified that in his opinion the fair market value of the property of appellant was on March 1, 1956, the sum of $25,000.

Paul C. Huston had been in the real estate business in the city of Grand Island as a member of a firm from 1922 until 1952 and since then has operated as an individual. The firm of which he became a member in 1922

had been in the real estate business there since 1889. In addition to conducting a general real estate business in Grand Island and that territory, the witness had since 1934 been engaged in appraising real estate throughout Nebraska for various banks, insurance and loan companies, individuals, firms, and organizations. He was familiar with the real estate and its value in Hamilton County and the city of Aurora. He had examined and appraised about 50 residence properties in the city of Aurora. He examined the real estate of appellant concerned in this case and testified in his opinion that the fair market value of it on March 1, 1956, was $27,143.97.

W. Ed Coblentz, an officer of a bank in Aurora who had been president of a company engaged in buying and selling real estate, making real estate loans, and appraising real estate, testified that he had been a licensed real estate broker in Aurora for 6 years and had been active in the real estate business during that time; that he had on an average sold two or three pieces of property each month at public auction; that he had made many private sales of real estate in Aurora, in Hamilton County, and Polk County; and that he has and does own real estate in the city of Aurora and Hamilton County. He was acquainted with the property of appellant. He testified that in his opinion the Adams property involved herein was on March 1, 1956, of the fair market value of $24,500.

It was stipulated that Joseph V. Cunningham of York, Nebraska, would testify in this case, if called as a witness, that he was actively and continuously engaged in the real estate business since 1930; that he was appraiser for Home Owners Loan Corporation from 1935 as long as it was in business; that he had been an appraiser and compliance inspector for the Veterans Administration since April 1944, and had made many appraisals in York of existing homes and new construction since that time; that he was engaged in the general practice as appraiser for states, corporations, individuals, and local govern-

mental bodies; that he has had experience in developing new residence areas and in selling, building, and remodeling homes in York, Nebraska, and neighboring counties; that he has examined and is familiar with the property of appellant involved in this case; and that in his opinion the fair and reasonable market value of the property on March 1, 1956, was $24,700.

Appellant testified that the property involved in this case had a fair market value on that date of $24,500.

The evidence of appellee is substantially as follows: A representative of an appraisal firm by fixed formula arrived at an amount which he described as the replacement cost of the building on the lots of appellant. This amount was stated as $32,300. It was entered on the card by the representative as "REPLACEMENT VALUE." He testified that by a formula based on the matters shown by a book he arrived at a reproduction cost which was the amount stated above; that the replacement cost was the result of a mathematical computation he made; and that the amount stated would be required to replace the house on the lots. He said he applied to the replacement cost the depreciation listed in the manual which was 6 percent, a purely arbitrary percentage, and this resulted in a figure of $30,360 which was described as the physical value. The result was necessarily an arbitrary one. There is no evidence to justify the deduction or depreciation of 6 percent of the alleged replacement cost. That deduction supports an inference that the replacement cost was neither the actual nor fair market value. The last amount stated was the one turned over by the representative to the county assessor. The representative was not examined as to his qualifications to form or express an opinion as to the actual or market value of the property as a unit but he was asked by appellee if he had an opinion as to the fair and reasonable market value of the premises and the representative answered that on March 1, 1956, the actual value would remain as $30,360 which was

what he had given as replacement cost of the house, without the lots, less 6 percent. He exhibited no foundation or qualifications for an opinion as to the market value of the real estate involved in this case and he gave none. He testified that he gave no attention to market value; he just figured the replacement cost less 6 percent of the building on the lots. This was the computation the county assessor accepted as the value of the building. The value of the lots, concerning which there is no dispute, was added to $30,360, making a total of $31,524 which was the valuation placed on the real estate of appellant in this case.

The chairman of the county board testified that after the objection and complaint of appellant were heard by appellee, the board and the assessor drove around and looked at the house, did not enter the premises but felt that the house was de luxe, and they left it as it was. The other members of the board concurred in the testimony of the chairman but contributed nothing additional. The record is clear that appellee merely accepted the valuation adopted by the assessor.

It is presumed that a board of equalization has properly performed its official duties and in making an assessment it acted upon sufficient legal evidence to justify its action. However, the presumption disappears when there is competent evidence on appeal to the contrary and thereafter the reasonableness of the valuation made by the board becomes one of fact to be determined upon the evidence, unaided by presumption, with the burden upon the party contesting to establish that an improper and unreasonable valuation has been placed on the property involved in the litigation. Ahern v. Board of Equalization, 160 Neb. 709, 71 N. W. 2d 307; K-K Appliance Co. v. Board of Equalization, 165 Neb. 547, 86 N. W. 2d 381; Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537; Matzke v. Board of Equalization, *supra.*

The issue in this case is whether or not the value of

the real estate of appellant as fixed by appellee is an amount substantially in excess of its actual or fair market value. That issue must be determined as an issue of fact upon competent evidence as any issue concerning the value of real estate is determined in other litigation. Generally, an issue of the actual or fair market value of real estate is determined from the testimony of persons qualified to express an opinion on the subject. This case does not present a contention that the value of the real estate has not been fairly and proportionately equalized with all other property, resulting in a discrimination and an unjust and unfair assessment. Such a contention was made in Newman v. County of Dawson, 167 Neb. 666, 94 N. W. 2d 47, cited and relied upon by appellee. Therein it is said: "In fact no complaint is made that the property is overvalued. The only objection is that its assessed value is too high in proportion to the values placed on other business properties in the city of Lexington." The two classes of cases are distinguishable and should not be confused.

The appellant has satisfied the burden placed upon him in the present case. His real estate involved herein was overvalued for taxation purposes as of March 1, 1956. The actual or fair market value of the property as of that date is determined to be the sum of $25,500.

The judgment should be and is reversed and the cause is remanded with directions to the district court for Hamilton County to render a judgment in this cause in harmony with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.